IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DELLA CARR, guardian *ad litem* for minor child A.
P. O/B/O AMY PETTINGILL (deceased),

                                                                        CV 06-825-ST

                        Plaintiff,

            v.                                                          FINDINGS AND
                                                                        RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner of the Social
Security Administration,

_____Defendant._____

STEWART, Magistrate Judge:

## **INTRODUCTION**

        Plaintiff, Della Carr ("Carr"), brings this action for judicial review of a final decision of

the Commissioner[1] denying the claim by Amy Pettingill ("Pettingill") for Social Security

disability insurance benefits.  Pettingill died on August 15, 2004.  Tr. 590.[2]  On September 7,

_____

        [1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  He is substituted as the
defendant in this action pursuant to FRCP 25(d)(1) and 20 USC § 405(g).

        [2] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

2004, Pettingill's sister, Renee Rankin, was made a substitute party to the administrative

proceedings.  Tr. 50.  The appeal to this court is pursued by Carr, as guardian *ad litem* of

Pettingill's surviving minor child.

This court has jurisdiction under 42 USC § 405(g).  For the reasons set forth below, the

Commissioner's decision should be reversed and remanded for further administrative

proceedings.

## BACKGROUND

Pettingill was born in 1968[3] and completed high school and one year of college.  Tr. 67,

92.  Prior to claiming a disability, she worked as a deckhand, cook, manager of a lodge, second

cook helper, and janitor.  Tr. 87.

On May 3, 2000, Pettingill filed concurrent applications for Title II Social Security

Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income disability

benefits ("SSI"), alleging disability since November 28, 1999.  Tr. 16, 86.  These were initially

denied on July 24, 2000.  Tr. 16.  She subsequently filed an application for DIB on February 2,

2004.  Tr. 67-69.  This claim was initially denied on March 19, 2004, and denied again after

reconsideration on May 27, 2004.  Tr. 36, 39-41, 44-48.  Pettingill timely requested a hearing

before an administrative law judge ("ALJ").  Tr. 37.  The hearing took place a year after her

death on August 15, 2005.  Tr. 604-22.

ALJ William L. Stewart, Jr., issued a partially favorable decision dated October 5, 2005.

Tr. 12-20.  Because his decision was partially favorable, the ALJ opened the unfavorable

determination of the Title II application filed on May 3, 2000, and found that Pettingill was

---

[3] In accordance with Local Rule 10.3(a)(3), only the relevant year is given.

under a disability as defined by the Social Security Act during a closed period beginning January

1, 2000, and ending September 30, 2002.  Tr. 20.

The Appeals Council denied the request for review on April 7, 2006.  Tr. 6-11.  That

decision became the final decision of the Commissioner.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 CFR § 404.1520.  A disability is the "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of no less than 12 months[.]"  42 USC § 423(d)(1)(A).

Below is a summary of the five step inquiry as described in *Tackett v. Apfel*, 180 F3d 1094,

1098-99 (9th Cir 1999):

At step one, the Commissioner determines whether the claimant is engaged in substantial

gainful activity.  If so, the claimant is not disabled.  If the claimant is not engaged in substantial

gainful activity, the Commissioner proceeds to step two.  20 CFR § 404.1520(b).

At step two, the Commissioner determines whether the claimant has one or more severe

impairments.  If not, the claimant is not disabled.  If the claimant has a severe impairment, the

Commissioner proceeds to step three.  20 CFR § 404.1520(c).

At step three, the Commissioner determines whether the claimant's impairment "meets or

equals" one of the impairments listed in the SSA regulations, 20 CFR Part 404, Subpart P,

Appendix 1 ("Listing of Impairments").  If so, the claimant is disabled.  If the claimant's

impairment does not meet or equal one listed in the regulations, then the Commissioner proceeds to step four. 20 CFR § 404.1520(d).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by the impairments. 20 CFR § 404.1545(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the Commissioner determines whether the claimant is able perform work he or she has done in the past. If so, the claimant is not disabled. If the claimant demonstrates he or she cannot perform work done in the past, the Commissioner proceeds to step five. 20 CFR § 404.1520(e).

At step five, the Commissioner determines whether the claimant is able to do any other work. If not, the claimant is disabled. If the Commissioner finds the claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that the claimant can perform. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, then the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 CFR §§ 404.1520(f), 404.1566.

At steps one through four, the burden of proof is on the claimant.  *Tackett*, 180 F3d at 1098.  At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id.*

## THE ALJ's FINDINGS

The ALJ found that Pettingill met the insured status requirements of the Social Security Act and did not engage in substantial gainful activity after the onset date of her disability.  Tr. 17.  He determined that she had the following severe impairments: "degenerative disc disease status post multiple surgeries, laminectomy April 1997, fusion November 2001, and redo fusion July 2002, history of breast cancer in remission status post mastectomy and chemotherapy, and obesity."  *Id*.  However, he concluded that Pettingill's impairments did not, either singly or in combination, meet or equal the requirements set forth in the Listing of Impairments.  *Id*.

He then assessed Pettingill as having the RFC to "lift and carry 10 pounds frequently and 20 pounds occasionally, with an opportunity to change positions as needed for comfort.  She could not sit for eight hours per day.  She was limited to occasional bending."  Tr. 18.

The ALJ concluded that the evidence regarding Pettingill's back condition supported a finding of disability between January 1, 2000, and September 30, 2002.  *Id*.

After September 30, 2002, the ALJ found that Pettingill would be unable to perform her past work, but "experienced medical improvement" and "recovery to a level set forth in" the RFC.  *Id*.  Although Pettingill was diagnosed with breast cancer in December 2002, underwent a mastectomy in January 2003 and chemotherapy through April 2003, the ALJ concluded that "the cancer was apparently in remission, as the medical records showed no recurrence."  *Id*, n2.  Finding no 12-month period of disability due to the cancer and no expectation that the condition

would result in death, the ALJ concluded that Pettingill's disability could not be based upon the cancer. *Id*. He also noted that her cause of death was unknown. Tr. 18.[4]

After September 30, 2002, the ALJ determined that Pettingill was capable of making a successful adjustment to unskilled, light jobs that existed in substantial numbers in the national economy as a small products assembler, ticket seller, or storage facility rental clerk. Tr. 18-19.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986) (citations omitted). If supported by substantial evidence, the Commissioner's decision must be upheld, even though the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40; *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001) (citation omitted) ("the court may not substitute its judgment for that of the Commissioner").

## ANALYSIS

Carr alleges that the ALJ erred by: (1) concluding that the record supports medical improvement in Pettingill's condition as of September 30, 2002; (2) improperly rejecting the opinions of Pettingill's treating physicians; (3) improperly rejecting Carr's lay witness

---

[4] In the Death Certificate dated August 23, 2004, Pettingill cause of death is listed as "unknown." Tr. 590.

testimony; and (4) improperly rejecting Pettingill's written testimony. Carr requests that the ALJ's decision be reversed and remanded for payment of DIB. For the reasons that follow, this court finds that the ALJ's decision should be reversed and the case should be remanded for further administrative proceedings.

I.    **Treating Physicians' Opinions**

Carr contends that the ALJ improperly rejected the opinions of Pettingill's treating physicians, Dr. Dale E. Harris and Dr. Catherine J. Gallo.

A.    **Legal Standard**

The ALJ is responsible for resolving conflicts and ambiguities in medical evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1195 (9th Cir 1999) (citation omitted). Generally, a treating physician's opinion is afforded the greatest weight in disability cases because "the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Ramirez v. Shalala*, 8 F3d 1449, 1453 (9th Cir 1993) (citations and internal quote marks omitted).

A treating physician's opinion is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other substantial evidence in the record. 20 CFR § 404.1527(d)(2). However, a treating doctor's uncontroverted opinion on issues that are reserved to the Commissioner is neither controlling nor given any special significance. 20 CFR § 404.1527(e); *see also* SSR 96-5p, 1996 WL 374183 (July 2, 1996). Whether an individual is "disabled" under the Social Security Act is an issue reserved to the Commissioner. SSR 96-5p.

An uncontradicted treating doctor's opinion may only be discredited for "clear and convincing reasons." *Thomas v. Barnhart*, 278 F3d 947, 957 (9th Cir 2002) (citation omitted). If it is contradicted by the opinion of another doctor, the ALJ may reject the treating doctor's opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1996) (citation omitted).

**B.    Analysis**

**1.    Dr. Harris**

Dr. Harris was Pettingill's primary care physician in 1997 and again from February 2002 until the time of her death in August 2004. Tr. 563, 592.

In a letter dated December 3, 2004, Dr. Harris stated that Pettingill had:

> severe back problems that predated her breast cancer. These problems were severe and limited her ability for employment. She certainly was unable to do persistent sedentary work for a routine eight hour day on a regular basis because of degenerative joint disease and degenerative disk disease of the spine.

*Id*.

He noted that at the time of an April 14, 2004 visit, Pettingill was taking medications "to manage her pain, but in [his] opinion, remained unable to be employed." *Id*.

Dr. Harris also completed a questionnaire on June 3, 2005, after reviewing the medical records concerning Pettingill's back surgery, the physical capacity evaluations ("PCEs") prepared by the Mercy Institute of Rehabilitation, and Carr's written statement dated September 23, 2004. Tr. 593-94. In this questionnaire, he confirmed that Pettingill's low back symptoms were as severe at the end of her life as Carr described them and, at the time of her death, she had an MRI scheduled to examine her low back condition because she complained of low back pain.

*Id.* He also noted that Pettingill had a breast removed due to cancer and underwent radiation treatment and chemotherapy. Tr. 594. In Dr. Harris' opinion, the radiation and chemotherapy treatment caused symptoms so severe that he "would have expected there would have been days when [Pettingill] was too ill to attend or complete an 8 hour day doing sedentary, unskilled, non-stressful and repetitive work," occurring "more than one day per month." Tr. 594. He also opined that "this level of interference with function caused by surgery and cancer [began] with the first surgery," and continued "until the end of her life." *Id.*

The Commissioner argues that Dr. Harris' chart notes do not support his opinion. Indeed, in April 2004, Dr. Harris noted that Pettingill was "in good spirits," "able to stand and walk reasonably well." Tr. 485.[5] However, this court is constrained to review only the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F3d 871, 874 (9th Cir 2003) (citations omitted). Here the ALJ did not mention Dr. Harris' opinions or records and offered no rationale for rejecting his opinions. While treating physicians' opinions on disability cannot be given controlling weight, they "must never be ignored." SSR 96-5p, 1996 WL 374138 *3. The ALJ failed to offer any reasons, let alone specific and legitimate reasons, for rejecting the opinion of Dr. Harris.

As a result, Carr urges this court to credit Dr. Harris' opinion as true and remand the case for benefits. The Ninth Circuit has established the following three-part test for determining when the court should grant an immediate award of benefits:

///

---

[5] Although not highlighted by the Commissioner, Dr. Harris also refilled medications, explained to Pettingill that any change in medication would not likely improve her situation, and concluded she should continue physical activity "as tolerated." Tr. 485.

> (l)  the ALJ has failed to provide legally sufficient reasons for
> rejecting such evidence, (2) there are no outstanding issues
> that must be resolved before a determination of disability can
> be made, and (3) it is clear from the record that the ALJ would
> be required to find the claimant disabled were such evidence
> credited.

*Harman v. Apfel,* 211 F3d 1172, 1178 (9th Cir 2000).

Based on this standard, it is inappropriate to credit Dr. Harris' opinion as true because "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or significance."  SSR 96-5p, 1996 WL 374138 *3 (1996).  Whether Pettingill was able to work eight hours a day at some job, despite her symptoms, is an issue reserved to the Commissioner.  *Id*.

Accordingly, a remand is necessary in order for the ALJ to properly weigh Dr. Harris' opinion, evaluate whether his chart notes support his opinion, and decide whether it is necessary to recontact Dr. Harris in accordance with SSR 96-5p, which states in pertinent part:

> Because treating source evidence (including opinion evidence) is
> important, if the evidence does not support a treating source's opinion on
> any issue reserved to the Commissioner and the adjudicator cannot
> ascertain the basis of the opinion from the case record, the adjudicator
> must make "every reasonable effort" to recontact the source for
> clarification of the reasons for the opinion.

*Id* at *6.

### 2.    Dr. Gallo

From 1997 to December 2002, Pettingill was under the care of Dr. Gallo for her back problems.  Tr. 407-434.  As the ALJ acknowledged, Dr. Gallo performed a laminectomy and fusion on November 28, 2001, and again on July 9, 2002.  Tr. 17.  The ALJ noted that on July 30, 2002, Dr. Gallo reported that "[o]verall she is doing much better . . . She will follow up

here in 6 weeks or so and at that point should be ready for some light duty." Tr. 17, 412.

Dr. Gallo's next chart note is dated December 5, 2002, at which point she released Pettingill to

sedentary work, with no pushing, pulling or lifting in excess of 10 pounds, prescribed continued

physical therapy, and referred her to a "work hardening program" and a PCE. Tr. 411.  In

May 2003, the PCE evaluation team, which included a doctor, concluded that "[s]he would only

be able to work 4 hours at a sedentary level with rest breaks every 1 hour . . ." Tr. 390.  After a

later PCE conducted on July 11, 2003, the same team concluded that Pettingill was "able to

return to a medium physical demand level at the discretion of Dr. Gallo." Tr. 597.  On July 29,

2003, Dr. Gallo endorsed the PCE team's recommendations.  Tr. 408.

The ALJ relied on Dr. Gallo's reports to conclude that as of September 30, 2002,

Pettingill experienced medical improvement in her ability to work. Tr. 18.  It is unclear how the

ALJ determined September 30, 2002, as the date of Pettingill's alleged medical improvement,

given that Dr. Gallo did not actually release Pettingill to work until December 5, 2002.  Even

then, she released Pettingill only to sedentary work and did not endorse medium work until

July 29, 2003.

The ALJ also incorrectly applied a 12-month duration requirement for the cancer.  He

found that since Pettingill was sufficiently improved and no longer disabled by her back

condition after September 30, 2002, the cancer, which began in December 2002 and was in

remission by April 2003, did not last for 12 months.  Tr. 18.  However, "[i]n determining

whether a beneficiary's disability continues, if a new disabling impairment(s) begins in or before

the month in which the last disabling impairment(s) is no longer disabling, disability is found to

be continuing" regardless of the duration of the subsequent impairment.  SSR 82-52, 1982 WL

31376 * 2 (1982).  The current record contains no evidence to support the ALJ's finding that
Pettingill medically improved to the point of being able to return to light work after September
2002.  At the earliest, there is evidence from Dr. Gallo that Pettingill's functional ability became
sufficiently improved to perform sedentary work in December 2002.  The onset month of
Pettingill's cancer is also December 2002.  Therefore, SSR 82-52 applies and the impairment of
cancer has no 12-month duration requirement.

On remand, the ALJ should reevaluate all the relevant evidence in the record and accord
it the appropriate weight, including evidence of functional limitations caused by cancer.

## II.    Pettingill's Testimony

### A.    Legal Standard

When deciding whether to accept the subjective symptom testimony of a claimant, the
ALJ is required to perform a two-stage analysis.  In the first stage, the claimant must produce
objective medical evidence of one or more impairments and show that the impairment or
combination of impairments could reasonably be expected to produce some degree of symptom.
*Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996) (citations omitted).  The claimant is not
required to show that the impairment could reasonably be expected to cause the severity of the
symptom, but only that it could reasonably have caused *some* degree of the symptom.  *Id*
(emphasis added).

In the second stage of the analysis, the ALJ must assess the claimant's credibility
regarding the severity of the symptoms.  The ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's
> reputation for lying, prior inconsistent statements concerning the
> symptoms, and other testimony by the claimant that appears less than
> candid; (2) unexplained or inadequately explained failure to seek

> treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id* at 1284 (citations omitted).

The following factors must also be considered: any contradictions or corroborations, the claimant's prior work record, the nature of any symptoms and medical treatment, her daily activities, and any other factors concerning the claimant's functional limitations and restrictions. 20 CFR § 404.1529; SSR 96-7p.

"[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of [symptom]." *Bunnell v. Sullivan*, 947 F2d 341, 345 (9th Cir 1991) (*en banc*). "While subjective pain testimony cannot be rejected on the sole ground that it is not corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F3d 853, 857 (9th Cir 2001), citing 20 CFR § 404.1529(c)(2).

If the ALJ finds the claimant's symptom testimony is not credible, the ALJ '"must specifically make findings which support this conclusion" and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit" it. *Bunnell*, 947 F2d at 345 (internal quotations and citations omitted). Absent evidence of malingering, the ALJ may reject symptom evidence only by giving clear and convincing reasons, including which testimony is not credible and what facts in the record lead to that conclusion. *Smolen*, 80 F3d at 1281, 1284. With evidence of malingering, the ALJ must provide "specific, cogent reasons" for his disbelief.

*Reddick v. Chater*, 157 F3d 715, 722 (9th Cir 1998). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F3d at 834 (citations omitted).

**B.    Analysis**

Although Pettingill was deceased by the time of the administrative hearing, the record contains the forms she completed in support of her disability application, including the Adult Disability Report, Supplemental Questionnaire for Individuals with Back Injuries, Supplemental Questionnaire for Individuals with Cancer, Pain Questionnaire, and Daily Activities Questionnaire.

In an undated Supplemental Questionnaire for Individuals with Back Pain, Pettingill described most of her pain being in her right leg, with foot tingling and numbness, as well as sharp pains in her buttox on the right side, stiffness if she did "too much repetitiously," and back ache. Tr. 103. Driving bothered her "a lot from sitting" but she was "OK" once she got moving. *Id*. She was just "getting back into walking," but at the end of the day her back hurt. *Id*. Her medicines took the pain away. Tr. 104.

In an undated Supplemental Questionnaire for Individuals with Cancer, Pettingill described feeling "very tender around the mid section from the last surgery" on October 15, 2003, getting "very tired and irritated easily," and experiencing hot sweats. Tr. 106. She did not think she could carry the weight she used to carry in her previous jobs. Tr. 107. She stayed "home a lot" and did not have "the energy to go out or the inclination to see many people." *Id*.

In a Pain Questionnaire signed on March 1, 2004, Pettingill stated that her pain was mostly in her lower back and left leg, her back ached "almost all the time" and she felt sharp

pain down her left leg once a week.  Tr. 119.  Sometimes she ached "all day" and the pain got

worse with more strenuous and repetitious activities.  *Id*.  She walked "a lot" with her daughter

and her back hurt when they arrived home.  *Id*.  Putting her feet up and relaxing relieved the pain

and she had to "put her feet up once a day, usually when [her] daughter was napping."  Tr. 120-

21.  She was better when she "[kept] on the move" because that way she did not "get stiff."  Tr.

120.  Her activities included sweeping daily and doing laundry, washing dishes, and mopping

floors once a week.  Tr. 123.  However, she no longer had the stamina to do some of the things

she used to do, such as being in a pool league, hiking, hunting and camping.  Tr. 126.

On April 20, 2004, she "felt sore and got very tired, some days are worse than others."

Tr. 133.  On June 10, 2004, she wrote: "I tire very easily.  I don't finish tasks when I start them.

If I start something when I'm stopping activities I'm sore and tired and rest for a day or so.  If I

can, I will soak in a hot tub."  Tr. 145.

Carr correctly points out that the ALJ erred by failing to discuss Pettingill's testimony.

Although required to do so, the ALJ offered no clear and convincing reasons (or any reasons for

that matter) for rejecting Pettingill's testimony.  However, crediting Pettingill's testimony as true

would not resolve the issue of disability.  "In cases where the testimony of the vocational expert

has failed to address a claimant's limitations as established by improperly discredited evidence,

we consistently have remanded for further proceedings rather than payment of benefits."

*Harman*, 211 F3d at 1180 (citations omitted).  Here, no vocational expert testified that an

individual with the functional limitations described by Pettingill cannot work.  Therefore, a

remand for further administrative proceedings is appropriate to make that determination.

///

15 - FINDINGS AND RECOMMENDATION

**III.    Lay Witness Testimony**

    **A.    Legal Standard**

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *Dodrill v. Shalala*, 12 F3d 915, 919 (9th Cir 1993); 20 CFR § 404.1513(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996) (citations omitted). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F3d at 919; *see also Lewis v. Apfel*, 236 F3d 503, 511 (9th Cir 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

    **B.    Analysis**

Carr, a friend of Pettingill, testified at the hearing. The ALJ summarized her testimony as follows:

> The testimony of Ms. Carr was that the claimant got better after the November 2001 surgery but then got worse again and needed another surgery in July 2002. Ms. Carr testified that after the third back surgery in July 2002 there was improvement in the claimant's condition, and she entered a work hardening program which she enjoyed. The cancer was diagnosed in December 2002, not long after she entered the work hardening program.

Tr. 17.

The ALJ did not comment on Carr's testimony that between July 2002 and her death in August 2004, Pettingill experienced "four to five" bad days every week during which the most

she was able to do was get dressed and feed her young child.  Tr. 616-17.  She also testified that

right after the July 2002 surgery, Pettingill "felt good, was able to be up and drive and move

around pretty good," but then "it would slowly go back to the point where . . . she could not get

out and do things."  Tr. 613.  On her bad days, "[h]er legs would swell so that she would – it

would hurt to walk.  No energy, depression because some of the meds that she had to take were

probably not helping with that, not being able to get up and around even."  Tr. 616.

Carr also submitted a written statement dated September 23, 2004.  Tr. 149-51.  There

she said that "over the last two years, [Pettingill] spent at least one day a week in pain so severe,

she spent most of the day in bed, getting up only to provide necessary care for the child."

Tr. 150.

The ALJ was required to consider and comment on the lay testimony as it concerned

how Pettingill's impairments impacted her ability to work.  20 CFR § 404.1513(d)(2).  The ALJ

erred by failing to consider Carr's testimony regarding the decline in Pettingill's functional

abilities after July 2002.

Carr urges this court to credit her testimony as true and to remand the case for benefits.

She relies on *Schneider v. Comm'r*, 223 F3d 968, 974 (9th Cir 2000), which held that ALJ erred

by ruling that the claimant did not meet the listing when:  (1) the claimant submitted substantial

evidence in the form of five letters from ex-employers and friends discussing her severe

functional limitations; and (2) the Commissioner cited no evidence to support his finding that the

ALJ had the ability to work.  Because there were no pending issues and no utility to further

administrative proceedings, the court reversed and remanded for an award of benefits.

Unlike *Schneider*, the Commissioner has presented some evidence from Dr. Harris' chart notes, the PCEs and Dr. Gallo that Pettingill's functional limitations still allowed her to work. Therefore, a remand for administrative proceedings is necessary in order for the ALJ to weigh Carr's testimony in light of the other evidence in the record.

## RECOMMENDATION

Based on the foregoing, the Commissioner's decision should be REVERSED and this case should be REMANDED to the Commissioner pursuant to Sentence Four of 42 USC § 405(g) for further proceedings to weigh all the evidence, including Dr. Harris' opinion and records, Pettingill's written testimony, and Carr's hearing and written testimony. This may likely necessitate a new RFC determination and new vocational expert testimony.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due by April 20, 2007. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 4th day of April, 2007.


/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

18 - FINDINGS AND RECOMMENDATION